**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GIOVANI CARANDOLA, LIMITED;
NORTH CAROLINA GOLF AND TRAVEL
INCORPORATED, d/b/a Pure Gold of
Southern Pines, a North Carolina
Corporation,
　　　　　　　*Plaintiffs-Appellees,*

　　　　　　　v.

DOUGLAS A. FOX, in his official
capacity as Chairman of the North
Carolina Alcoholic Beverage
Control Commission; MIKE A.
JOYNER, in his official capacity as
Member of the North Carolina
Alcoholic Beverage Control
Commission; RICKY WRIGHT, in his
official capacity as Member of the
North Carolina Alcoholic Beverage
Control Commission; BRYAN E.
BEATTY, in his official capacity as
Secretary of the North Carolina
Department of Crime Control and
Public Safety,
　　　　　　　*Defendants-Appellants.*

No. 05-2308

GIOVANI CARANDOLA, LIMITED;
NORTH CAROLINA GOLF AND TRAVEL
INCORPORATED, d/b/a Pure Gold of
Southern Pines,
                    *Plaintiffs-Appellants,*

                    v.

RICKY WRIGHT, in his official
capacity as Member of the North
Carolina Alcoholic Beverage
Control Commission; BRYAN
BEATTY, in his official capacity as          No. 06-1040
Secretary of the North Carolina
Department of Crime Control and
Public Safety; DOUGLAS A. FOX, in
his official capacity as Chairman of
the North Carolina Alcoholic
Beverage Control Commission;
MIKE A. JOYNER, in his official
capacity as Member of the North
Carolina Alcoholic Beverage
Control Commission,
                    *Defendants-Appellees.*

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-01-115)

Argued: October 24, 2006

Decided: December 15, 2006

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed in part, reversed in part, and vacated in part by published opinion. Judge Motz wrote the opinion, in which Judge Niemeyer and Judge Traxler joined.

## COUNSEL

**ARGUED:** Christopher G. Browning, Jr., Solicitor General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants/Cross-Appellees. J. Michael Murray, BERKMAN, GORDON, MURRAY & DEVAN, Cleveland, Ohio, for Appellees/Cross-Appellants. **ON BRIEF:** Roy Cooper, North Carolina Attorney General, John Foster Maddrey, North Carolina Assistant Solicitor General, John Julian Aldridge, III, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants/Cross-Appellees. Steven D. Shafron, BERKMAN, GORDON, MURRAY & DEVAN, Cleveland, Ohio, for Appellees/Cross-Appellants.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

The North Carolina Alcoholic Beverage Control Commission appeals to this court a second time. The Commission once again seeks relief from an order enjoining enforcement of a state statute regulating conduct on premises licensed by the Commission to serve alcohol. In the first appeal, we affirmed in relevant part an order that, in response to a challenge by Giovani Carandola, Ltd., preliminarily enjoined a predecessor statute. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir. 2002) ("*Carandola I*"). The North Carolina legislature then enacted a new statute. After Carandola, joined by additional plaintiffs, challenged that statute, the district court permanently enjoined the enforcement of its prohibitions on simulated sexual acts and fondling of sexual organs, finding these provisions vague and overbroad in violation of the First and Fourteenth Amendments; the court, however, refused to enjoin a prohibition on nudity, holding that it did not violate the Constitution. *See Giovani Carandola, Ltd. v.*

*Fox*, 396 F. Supp. 2d 630 (M.D.N.C. 2005) ("*Carandola II*"). The Commission appeals and Carandola cross-appeals. For the reasons stated herein, we affirm in part, reverse in part, and vacate in part.

I.

Carandola operates Christie's Cabaret, an erotic dancing establishment in Greensboro, North Carolina, which holds Commission permits to sell alcoholic beverages. On November 11, 2000, a Commission enforcement officer witnessed erotic dancers at Christie's performing in a manner that violated then-applicable state law. *See* N.C. Gen. Stat. § 18B-1005 (1995) and 4 N.C. Admin. Code 2S.0216 (2002).[1] When Christie's received a violation notice, Caran-

---

[1]Section 18B-1005 provided, in relevant part:

(a)   Certain Conduct — It shall be unlawful for a permittee or his agent or employee to knowingly allow any of the following kinds of conduct to occur on his licensed premises:

. . .

(4)   Any conduct or entertainment by any person whose private parts are exposed or who is wearing transparent clothing that reveals the private parts;

(5)   Any entertainment that includes or simulates sexual intercourse or any other sexual act; or

(6)   Any other lewd or obscene entertainment or conduct, as defined by the rules of the Commission.

Pursuant to subsection (a)(6) of the statute, the Commission adopted 4 N.C. Admin. Code 2S.0216:

(a)   No permittee or his employee shall allow any person to perform acts of or acts that simulate:

(1)   sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts that are prohibited by law;

(2)   the touching, caressing or fondling of the breasts, buttocks, anus, vulva or genitals;

(3)   the display of the pubic hair, anus, vulva or genitals.

dola filed suit, alleging that the statute and regulation violated its First Amendment rights. The district court held a hearing at which the officer who cited Christie's testified that general conduct violating the statute and regulation included touching one's own fully clothed buttocks, breasts, or genitals while in a licensed establishment. After the hearing, the district court preliminarily enjoined enforcement of the statute and the regulation on the ground that Carandola would likely prevail on an overbreadth challenge.

In *Carandola I*, we affirmed in relevant part, concluding that the statutory and regulatory restrictions swept "far beyond bars and nude dancing establishments." 303 F.3d at 516. We noted that the Commission itself conceded that "the plain language of the restrictions prohibits on licensed premises any entertainment that 'simulate[s]' sexual behavior, even if performers are fully clothed or covered, and even if the conduct is integral to the production — for example, a political satire, a Shakespeare play depicting young love, or a drama depicting the horrors of rape." *Id.* (alteration in original). After careful review of the Commission's interpretation of the challenged restrictions, we also determined that the restrictions were not "readily susceptible" to a limiting construction: indeed, the Commission did "not even suggest a possible limiting construction." *Id.* at 517. Accordingly, we held that the district court "did not abuse its discretion in finding that Carandola would likely prevail on its overbreadth challenge" and thus granting a preliminary injunction. *Id.* at 520.

In response to our ruling, the North Carolina General Assembly enacted a new statute, N.C. Gen. Stat. § 18B-1005.1 (2005), which provides:

> (a)   It shall be unlawful for a permittee or his agent or employee to knowingly allow or engage in any of the following kinds of conduct on his licensed premises:

> (b)   No permittee or his employee shall allow any person to use artificial devices or inanimate objects to depict any of the prohibited activities described in Paragraph (a) of this Rule.

> (c)   No permittee or his employee shall allow any person who exposes to public view any portion of his pubic hair, vulva, genitals or anus to remain in or upon the licensed premises.

> (1) Any conduct or entertainment by any person whose genitals are exposed or who is wearing transparent clothing that reveals the genitals;
>
> (2) Any conduct or entertainment that includes or simulates sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any act that includes or simulates the penetration, however slight, by any object into the genital or anal opening of a person's body; or
>
> (3) Any conduct or entertainment that includes the fondling of the breasts, buttocks, anus, vulva, or genitals.
>
> (b) Supervision. — It shall be unlawful for a permittee to fail to superintend in person or through a manager the business for which a permit is issued.
>
> (c) Exception. — This section does not apply to persons operating theaters, concerts halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value.

The Commission then sought to vacate as moot the preliminary injunction of the old statute. Although the Commission had not yet enforced the new statute, Carandola (joined by several additional plaintiffs) challenged the new statute, claiming that it too violated both the First and Fourteenth Amendments. At a bench trial concerning the validity of the new statute, Dr. Judith Hanna, an anthropologist who specializes in the non-verbal communication of dance, testified on behalf of Carandola that "movements in dance such as those with the hips, thighs, breasts, hair, and hands have traditionally been associated with simulating sex." *Carandola II*, 396 F. Supp. 2d at 653. The district court also considered testimony about whether sexually oriented businesses create negative secondary effects. With-

out resolving this question, the district court held that the Commission had produced sufficient evidence to support the legislative conclusion that sexually oriented businesses were associated with higher incidents of crime. *Id.* at 651.

The district court then issued a detailed opinion in which it upheld subsection 18B-1005.1(a)(1), concluding that the prohibition on nudity furthered North Carolina's interest in reducing negative secondary effects associated with the combination of adult entertainment and alcohol. *Id.* at 652. However, the court enjoined the enforcement of subsections (a)(2) and (a)(3), finding them both facially vague and overbroad, and unconstitutional as applied to Carandola. *Id.* at 655, 663. The Commission appeals the district court's determinations that subsections (a)(2) and (a)(3) are facially vague and overbroad, and unconstitutional as applied to Carandola. Carandola cross appeals, arguing that the court should have enjoined subsection (a)(1) of the statute, which prohibits nudity in licensed establishments. We consider first the Commission's appeal, then Carandola's cross-appeal.

## II.

The Commission contends that the district court erred in holding the new statute facially vague and facially overbroad. We review the district court's legal conclusions *de novo*. *North Carolina v. City of Virginia Beach*, 951 F.2d 596, 601 (4th Cir. 1992).

## A.

The Commission initially argues that subsections (a)(2) and (a)(3) are not vague. A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In particular, a court must ask whether the statutory prohibitions "are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)(*quoting U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 579 (1973)).

The district court invalidated subsection (a)(2) — prohibiting in licensed establishments conduct that "simulates sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any act that includes or simulates the penetration . . . by any object into the genital or anal opening" — because it found the word "simulates" vague. For example, the court feared that prohibiting "simulate[d] sexual intercourse" would preclude entertainers from gyrating their hips on stage "in a rapid motion." *Carandola II*, 396 F. Supp. 2d at 661.

However, the dictionary precisely defines "simulate" as a verb meaning "to make a pretense of; feign . . . [or] to assume or have the appearance or characteristics of." *Webster's New Universal Unabridged Dictionary* 1783 (1996). The Supreme Court and many other courts have held that the word "simulate" is sufficiently clear when used in similar statutory prohibitions. *See, e.g.*, *New York v. Ferber*, 458 U.S. 747, 765 (1982) (holding that a statute defining forbidden content, in part, as "actual or simulated sexual intercourse" "sufficiently describes" the prohibited material); *Miller v. California*, 413 U.S. 15, 25 (1973) (noting that "ultimate sexual acts" whether "actual or simulated" constitute a "plain example[ ] of what a state statute could define for regulation" as obscene); *United States v. Adams*, 343 F.3d 1024, 1034-36 (9th Cir. 2003) (upholding against vagueness challenge a statute prohibiting the possession of materials depicting a minor engaged in "sexually explicit conduct," which includes "simulated" acts); *Farkas v. Miller*, 151 F.3d 900, 901, 905 (8th Cir. 1998) (upholding against vagueness challenge a statute prohibiting "the actual or simulated public performance of any sex act" because "[p]ersons of ordinary intelligence would not be confused as to the . . . meaning of the term[ ] 'simulated sex act'"). Indeed, Carandola fails to cite, and we have not found, a case in which any court has held "simulate" vague in a similar context.

We too conclude that in context "simulate" is sufficiently precise to notify persons of ordinary intelligence of the conduct prohibited by the statute and to prevent the risk of arbitrary or discriminatory enforcement. As the Commission notes, "[T]here is a distinct and very real difference between a gesture that may, in the abstract, symbolize sexual intercourse (such as gyrating one's hips) and an act that causes the audience to believe that they are actually observing sexual

intercourse." Reply Brief of Appellants at 25. An act only constitutes simulated sexual intercourse or simulated masturbation if it creates the realistic impression of an *actual* sexual act. No one would mistake a dancer gyrating her hips for someone having intercourse, nor believe that a Carolina Panthers cheerleader patting her buttocks as part of a dance routine was masturbating.

The district court also enjoined enforcement of subsection (a)(3) — banning in licensed establishments "fondling of the breasts, buttocks, anus, vulva, or genitals" — after finding the word "fondling" unconstitutionally vague. The court noted that dictionaries define "fondle" differently. *Carandola II*, 396 F. Supp. 2d at 661 (comparing *Webster's New Universal Unabridged Dictionary* 745 (1996) (defining "fondle" as "to handle or touch lovingly, affectionately, or tenderly; caress"), *Webster's II New Riverside University Dictionary* 494 (1984) (defining "fondle" as "to treat indulgently and solicitously: pamper"), and *Webster's Ninth New Collegiate Dictionary* 480 (1987) (defining "fondle" as "to show affection or desire by caressing")).

Notwithstanding these slight differences, however, all definitions of "fondle" imply an element of "love," "affection," or "indulgen[ce]," whereas mere touching does not. For this reason, the new statute is more precise than the regulations implementing its predecessor, which banned "touching" as well as "fondling." *See* 4 N.C. Admin. Code 2S.0216(a)(2) (2002). Moreover, the present statute uses the single word "fondling" in conjunction with specified erogenous zones, indicating that it aims to prevent overt sexual contact, something the ordinary person likely understands. *See* N.C. Gen. Stat. § 18B-1005.1(a)(3)(2005).

Furthermore, although few cases have considered whether the word "fondle" is vague, those that have done so have concluded, as we do, that it is not. *See, e.g.*, *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057-58 (9th Cir. 1986) (holding that provisions of an ordinance prohibiting erotic dancers from "fondling" and "caressing" any patron were not unconstitutionally vague); *J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 444 (N.D. Ohio 1999) (holding that the word "fondle" is sufficiently clear and noting that "[r]egulatory language need not be mathematically precise"). Like "simulate," "fondling" is sufficiently clear to put persons of ordinary intelligence on notice as to

what conduct the statute prohibits and to prevent the risk of arbitrary enforcement.

For these reasons, we reverse the portions of the district court's order finding the new statute unconstitutionally vague on its face.

B.

The Commission next argues that the district court erred in holding subsections (a)(2) and (a)(3) facially overbroad. Pursuant to the overbreadth doctrine, a party may "challenge a statute on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (internal quotation marks omitted). "[W]here conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications . . . ." *Ferber*, 458 U.S. at 771. If an overbreadth challenge succeeds, "any enforcement" of the regulation at issue is "totally forbidden." *Broadrick*, 413 U.S. at 613. Thus, the Supreme Court has famously cautioned that the overbreadth doctrine "is, manifestly, strong medicine" and should be used "sparingly and only as a last resort." *Id.* A court should invoke a "limiting construction" or employ "partial invalidation" before resorting to a finding of facial overbreadth. *Id.*

1.

To determine whether a statute "reaches a substantial number of impermissible applications," *Ferber*, 458 U.S. at 771, a court must apply the appropriate level of First Amendment scrutiny. In *Carandola I*, we subjected the predecessor North Carolina statute to intermediate, rather than strict, scrutiny because the legislature enacted it, at least in part, "to address the secondary effects that follow from lewd conduct on licensed premises, and [because] hostility to erotic expression, if a purpose of the restrictions at all, does not constitute

the predominant purpose." *Carandola I*, 303 F.3d at 515 (*citing City of Erie v. Pap's A.M.*, 529 U.S. 277, 292 (2000) (plurality opinion) and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986)). It is even more plain that in enacting the new statute the legislature acted to reduce the secondary effects that flow from adult entertainment on licensed premises. Indisputably, the legislature passed the new statute in response to our opinion in *Carandola I* and the preamble to the new statute expressly states that its purpose is "to address the harmful secondary effects of such entertainment, including higher crime rates, public sexual conduct, sexual assault, prostitution, and other secondary negative effects," rather than to "suppress the conduct of [such] entertainment." 2003 N.C. Sess. Laws 382. Like the old statute, the new statute does not have as its "predominant purpose" an intent to suppress free expression. Thus, we again apply intermediate scrutiny to determine whether the statute reaches a "substantial number of impermissible applications," *Ferber*, 458 U.S. at 771.

To withstand intermediate scrutiny, a state must demonstrate that a statute "materially advances an important or substantial interest by redressing past harms or preventing future ones." *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 356 (4th Cir. 2001) (*citing Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994)). Here, as in *Carandola I*, even without considering any evidence, we can conclude that the State has a substantial interest in regulating nude and topless dancing, because such entertainment has "'a long history of spawning deleterious effects.'" 303 F.3d at 516 (*quoting Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637 (4th Cir. 1999)). Similarly, we can conclude that the State has a substantial interest in regulating "simulate[d]" sexual activity and "fondling" of sexual organs in licensed establishments because the State may "rely on the evidentiary foundation set forth in *Renton* and [*Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976)], to the effect that [harmful] secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood." *Pap's*, 529 U.S. at 297.[2]

---

[2]Although *Pap's* did not concern the exact conduct regulated here, it stands for the proposition that a government entity may rely on the evidentiary foundation established in *Renton* and *Young* to conclude that adult entertainment establishments, like Christie's Cabaret, are associated with negative secondary effects.

Despite these substantial government interests, in *Carandola I* we found the prohibitions overbroad because the challenged restrictions prohibited myriad expressive activities within "the heartland of [First Amendment] protection." 303 F.3d at 516 (internal quotation marks omitted). There, the Commission interpreted the old restrictions broadly, and construed "simulated" sexual behavior to ban sexually explicit conduct even by "fully clothed" performers in political satires or Shakespeare plays. *Id.* According to the Commission, the old restrictions also prohibited "much non-erotic dance — such as a ballet in which one dancer touches another's buttock during a lift — and all nudity or simulated nudity, however brief, in productions with clear artistic merit — such as the Pulitzer Prize winning play, *Wit*." *Id.* The Commission argued that such broad restrictions constituted the "'only means to protect its interest' in preventing societal problems." *Id.* at 517 (*quoting* Reply Brief at 7). We rejected that argument, concluding that the restrictions were facially overbroad because they swept "far beyond bars and nude dancing establishments" to reach a great deal of protected expression. *Id*. at 516.

Carandola maintains that, like the old restrictions, the new statute is facially overbroad because it prohibits "vast amounts of constitutionally protected expression." Brief of Appellees at 23. According to Carandola, the new statute's prohibition on "simulate[d]" sexual activity proscribes ballet, hip hop, belly dancing, flamenco, jazz dancing, and even "the Irish Step Dance," and its prohibition on "fondling" bars any "touch[ing] of [the] breast and buttocks." *Id.* at 31. Finally, Carandola contends that the exception set forth in the new statute — rendering all prohibitions inapplicable to performances in "theaters, concert halls, art centers, museums or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value" — is "exceedingly narrow" and does not cure the statute's facial overbreadth. *Id.* at 34.[3]

---

[3]Carandola cites cases from our sister circuits that assertedly support this view. *See, e.g.*, *Conchatta Inc. v. Miller*, 458 F.3d 258 (3d Cir. 2006); *Odle v. Decatur County*, 421 F.3d 386 (6th Cir. 2005); *Dream Palace v. County of Maricopa*, 384 F.3d 990 (9th Cir. 2004); *R.V.S., LLC v. City of Rockford*, 361 F.3d 402 (7th Cir. 2004); *Ways v. City of Lincoln*, 274 F.3d 514 (8th Cir. 2001); *Schultz v. City of Cumberland*, 228

The district court largely accepted this argument, but we cannot. To do so would ignore the Commission's concessions about the scope of the new statute and trivialize the legislative revisions made in response to *Carandola I*.

2.

First, rather than asserting, as it did in *Carandola I*, that the new statute reaches every wiggle or touch in a licensed establishment, the Commission concedes, indeed argues, that the new statute bans only limited activities. The Commission acknowledges that subsection (a)(2)'s prohibition on "simulate[d]" sexual acts only applies to performances "that give the realistic impression or illusion that sexual intercourse [or masturbation, etc.] is being performed for the audience." Reply Brief of Appellants at 30. Similarly, the Commission recognizes that subsection (a)(3)'s prohibition on "fondling" of buttocks, genitals, breasts, etc. only bars a performer from actually "manipulating specified erogenous zones." *Id.*

Under the Commission's interpretation, the new statute has no prohibitory effect on non-erotic dance and would not apply to "other mainstream entertainment, including popular and award-winning musicals such as *Cabaret*, *Chicago*, *Contact*, and *The Full Monty*." *Carandola I*, 303 F.3d at 516. In fact, the Commission conceded at oral argument that even a performance by Madonna, who is known for her sexually explicit dancing, would not fall within the new statute's ambit unless it gave the audience the realistic impression that Madonna was actually performing a sexual act.

Carandola argues, however, that we cannot accept the Commission's construction of "simulates" and "fondling" — not because the

F.3d 831 (7th Cir. 2000); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994). But in fact, not a single one of these cases invalidates for facial overbreadth a statute like that at issue here. None involves a statute with an exception for performances of serious artistic value at certain venues. Furthermore, the majority of these cases do not concern prohibitions like that here, which only apply to places serving alcohol; such prohibitions are necessarily narrower than a universal ban on sexually explicit conduct.

statute is not "readily susceptible" to this construction, but because the "evidentiary record refutes" this construction. Brief of Appellees at 37. The "evidentiary record" on which Carandola relies, however, involves enforcement of the old restrictions; the new statute has *never* been enforced and as such we have no relevant "evidentiary record." Rather, the Commission has iterated and reiterated that it does not interpret and will not enforce the new statute as it did the old restrictions. *See* Reply Brief of Appellants at 23 n.5, 26 n.6, and 28 n.7. On a facial challenge, we must apply a reasonable limiting construction where one is available. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988). Here, the statute is "readily susceptible" to the construction offered by the Commission, *see id.*, and we have no reason to doubt that the Commission will enforce the statute in accordance with this limited interpretation.

3.

Construing the new statute to prohibit only manipulation of specified erogenous zones and conduct that gives the realistic impression of a sexual act cures much of the overbreadth we found in the old restrictions in *Carandola I*. But there, we also noted that the challenged restrictions reached far beyond bars and nude dancing establishments to affect venues such as arenas, theaters, and comedy clubs — all places that might provide entertainment protected by the First Amendment. Citing *Farkas v. Miller*, 151 F.3d 900 (8th Cir. 1998), and *J&B Entm't v. City of Jackson*, 152 F.3d 362 (5th Cir. 1998), we suggested that the State could have limited the scope of its statute to "target[ ] only those venues where secondary effects are likely to arise, while leaving other speech unaffected." *Carandola I*, 303 F.3d at 517.

The North Carolina legislature took this suggestion to heart and provided an exception in the new statute for "persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value." N.C. Gen. Stat. § 18B-1005.1 (2005). Carandola argues that this exception is "exceedingly narrow," Brief of Appellees at 34, and the district court agreed.

The exception is indeed narrower than that in one of the cases we cited, *J&B Entm't*.[4] There the statute exempted all persons "engaged in expressing a matter of serious literary, artistic, scientific or political value," regardless of the venue in which the expression took place. *J&B Entm't*, 152 F.3d at 381. But the exception here is similar to that upheld in *Farkas*, the other case we noted as an exemplar in *Carandola I*; in *Farkas*, the challenged statute prohibited "the actual or simulated public performance of any sex act" in businesses required to obtain a sales tax permit, but exempted those performances in "a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances." 151 F.3d at 901, 902.

To be sure, neither the exception in *Farkas*, nor that in the new North Carolina statute covers *all* venues that might conceivably host serious artistic performances. Thus, we cannot agree with the *Farkas* court that such an exception fully "limits the reach of the restrictions to the type of adult entertainment that is associated with harmful secondary effects." *Id.* at 905. However, the exception does shelter most protected activity.

Certainly, the new statute, with the limited constructions of subsections (a)(2) and (a)(3) proffered by the Commission and the exception in subsection (c), does not "reach[ ] a substantial number of impermissible applications." *Ferber*, 458 U.S. at 771. Accordingly, we reverse the portions of the district court order holding subsections (a)(2) and (a)(3) of the statute unconstitutional as facially overbroad.[5]

---

[4]We reject the Commission's argument that the exception in the statute protects all performances of serious literary, artistic, scientific, or political value, no matter where performed; for example, the Commission suggests that a restaurant, nightclub, or other establishment presenting a play would at that moment become a "theater," and so would be protected from the ban. Reply Brief of Appellants at 33. Carandola argues and we agree that the language of the exception is not "readily susceptible" to the Commission's proposed construction. Accordingly, although of course the Commission may enforce the exception in this manner, we cannot adopt that construction. *See Carandola I*, 303 F.3d at 517 (*citing Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

[5]The Commission also appeals the district court's holding that subsections (a)(2) and (a)(3) of the new statute are unconstitutional as applied

### III.

Carandola cross appeals the portion of the district court order finding that subsection (a)(1) of the new statute — which prohibits "[a]ny conduct or entertainment by any person whose genitals are exposed or who is wearing transparent clothing that reveals the genitals" — withstands a facial challenge. Carandola maintains that the district court should have enjoined enforcement of subsection (a)(1) because it prohibits nudity even when it occurs as part of a serious theatrical production or artistic work.

We agree with the district court, however, that subsection (a)(1) is not facially overbroad. The Supreme Court has upheld general public nudity statutes (i.e., not prohibitions confined to licensed establishments like those at issue here) that required erotic dancers to wear pasties and G-strings. *See Pap's*, 529 U.S. at 300-01; *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 571 (1991) (plurality opinion) ("[T]he requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic.").

Although *Pap's* and *Barnes* do not involve what might be generally regarded as serious theatrical productions, nude expression in such

---

to Carandola. Similarly, Carandola cross-appeals, arguing that the district court erred in its analysis of the as-applied challenge in declining to resolve the factual dispute over whether sexually oriented businesses are *actually* associated with negative secondary effects. Neither claim is ripe for review, however, since the new statute has never been applied to Carandola. Carandola bases its as-applied challenge entirely on the citations it received under the old statute. "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Renne v. Geary*, 501 U.S. 312, 320-21 (1991). Thus, Carandola cannot claim any current adverse affects. *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 198 (4th Cir. 1997) (holding as-applied challenge not ripe because "all of the 'harms' which the [plaintiff] alleges were suffered by it are stated in the past tense and relate to . . . a statute which is no longer in effect"). Because Carandola's as-applied challenge is not ripe for review, we must vacate the judgment of the district court that subsections (a)(2) and (a)(3) are unconstitutional as applied to Carandola.

productions is most likely to occur in the venues specifically exempted from the new statute's prohibitions. It is possible to imagine hypothetical examples of protected nudity that would occur in licensed venues not exempted by the new statute, but it is hard to conceive of a substantial number of such impermissible applications. *See J&B Entm't*, 152 F.3d at 367 (upholding statute against overbreadth challenge because "although hypothetical examples in which the Ordinance may be overbroad can be imagined, these examples, in comparison to its legitimate sweep, are not substantial"). We thus affirm the district court judgment upholding subsection (a)(1) of the statute.

## IV.

For the foregoing reasons, the district court's judgment is

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND VACATED IN PART.*