**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1321**

MAAGES AUDITORIUM; CD15CL2001, INC., d/b/a Bazz and Crue, d/b/a X4B
Lounge; JOHN DOE; JANE DOE, for all those similarly situated; D2,

        Plaintiffs - Appellants,

      v.

PRINCE GEORGE'S COUNTY, MARYLAND,

        Defendant - Appellee.

**No. 16-1699**

NICO ENTERPRISES, INC., d/b/a Nico Banquet Hall; JOHN DOE; JANE DOE,
On Behalf of Themselves and All Others Similar Situated,

        Plaintiffs - Appellants,

      v.

PRINCE GEORGE'S COUNTY, MARYLAND,

        Defendant - Appellee.

Appeals from the United States District Court for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Senior District Judge. (8:13−cv−01722−DKC; 8:15-cv-02832-
DKC)

Argued:  January 24, 2017                                    Decided:  March 15, 2017

_____

Before NIEMEYER, TRAXLER, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Michael Lloyd Smith, SMITH, GRAHAM & CRUMP, LLC, Largo, Maryland, for Appellants.  Jared Michael McCarthy, Deputy County Attorney, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maages Auditorium and Nico Enterprises, two adult entertainment establishments in Prince George's County, Maryland, appeal the district court's denial of their constitutional challenges to a county zoning ordinance. Maages also appeals the district court's decision to dismiss its claims on behalf of two other plaintiffs for lack of standing. Finding no error in the district court's reasoning, we affirm.

## I.

### A.

This case arises from a series of constitutional challenges to a zoning ordinance in Prince George's County. Starting in 2010, the County's zoning council passed a series of ordinances regulating areas where adult entertainment businesses could operate.

The first ordinance, CB-46-2010, regulated the zones in which these businesses could locate and imposed various other rules restricting their operation. It defined "adult entertainment" as:

> [A]ny exhibition, performance or dance of any type conducted in a premise where such exhibition, performance or dance involves a person who:
>
> > (A) Is unclothed or in such attire, costume or clothing as to expose to view any portion of the breast below the top of the areola or any portion of the pubic region, anus, buttocks, vulva or genitals; or
> >
> > (B) Touches, caresses or fondles the breasts, buttocks, anus, genitals or pubic region of another person, or permits the touching, caressing or fondling of his/her own breasts, buttocks, anus, genitals or pubic region by another person, with the intent to sexually arouse or excite another person.

Prince George's Cty. Code § 27-107.01 (2010).

The ordinance also banned such businesses from operating anywhere in the County except for in an "I-2" industrial zone, and limited their hours of operation to 5 p.m. to 3 a.m. Prince George's Cty. Code §§ 27-461, 473, 475.06.06. Finally, the ordinance required these businesses to be more than a thousand feet from any school, residential zone, land used for residential purposes, or other adult entertainment building. *Id.* § 27-475.06.06.

The second ordinance, CB-56-2011, amended the definition of "adult entertainment" in subsection (A) above by adding the italicized language below:

> Is unclothed or in such attire, costume or clothing as to expose to view any portion of the breast below the top of the areola or any portion of the pubic region, anus, buttocks, vulva or genitals *with the intent to sexually arouse or excite another person*

Prince George's Cty. Code § 27-107.01 (2011) (emphasis added).

The ordinance also provided existing adult entertainment businesses in certain non I-2 zones with an option to apply for a "special exception," which allows existing businesses to remain in non-conforming locations. Section 27-317 of the County Code lists a series of criteria that zoning officials use when deciding whether to grant such an exemption.

## B.

Maages Auditorium, an adult entertainment business located outside an I-2 zone in the County, and John and Jane Doe—a representative customer and employee of the establishment—filed an eight-count complaint challenging the ordinances in the United

4

States District Court for the District of Maryland. Of those counts, only the following are relevant to this appeal:

- Count I, alleging that the ordinances violate the Equal Protection Clause of the Fourteenth Amendment, by burdening only adult entertainment businesses;

- Counts II, III, and VI, alleging that the ordinances and the "special exception" provision violate the First Amendment by operating as a prior restraint on speech, lacking adequate procedural safeguards, and allowing for unbridled administrative discretion;

- Count V, alleging that the ordinances and special exception are unconstitutionally vague; and

- Count VII, alleging that the ordinances fail to provide adequate alternative avenues of communication for adult entertainment.[1]

The district court dismissed John and Jane Doe as parties for a lack of standing, and dismissed Count IV as unripe. *Maages Auditorium v. Prince George's Cty., Md.*, 4 F. Supp. 3d 752, 762 (D. Md. 2014) ("*Maages I*"). The court also granted summary judgment in favor of the County on Counts I, II, III, V, and VI. *Id.* at 779. Following discovery, the district court granted summary judgment in the County's favor on Counts VII and VIII. *Maages Auditorium v. Prince George's Cty., Md.*, No. 13-1722, 2016 WL 827385, at *1 (D. Md. Mar. 3, 2016) ("*Maages II*"). Maages appeals the district court's decisions on Counts I, II, III, V, VI, and VII.

---

[1] Maages does not appeal the district court's dismissal of its claim that the ordinances deprive it of property without compensation and due process of law (Count IV), or the court's decision to grant summary judgment on Maages's claim that the ordinances violate Maryland's amortization laws (Count VIII).

Another adult entertainment business, Nico Enterprises, filed a similar complaint against the County, arguing that the zoning laws violated Nico's rights under the First, Fourth, Fifth, and Fourteenth Amendments, in part because the laws were vague, overbroad, and unconstitutional on their face and as applied. The County filed a motion to dismiss, which the court granted. *Nico Enters., Inc. v. Prince George's Cty., Md.*, 186 F. Supp. 3d 489, 492 (D. Md. 2016). Regarding the overbreadth claim, the district court found that the ordinance's language could be interpreted in a limited way to avoid impermissibly applying to protected speech. *Id.* at 498–99. As for the vagueness claim, the district court ruled that Nico lacked standing to bring the claim, and even if it had standing, the ordinance's terms were sufficiently well-defined to give an average person a reasonable understanding of the regulations. *Id.* at 499–500. Nico challenges the district court's ruling on its overbreadth and vagueness claims.

## II.

We review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6). *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 179–80 (4th Cir. 2009). "In considering such a motion, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Id.* at 180. To survive such a motion, "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

6

We also review a district court's grant of summary judgment de novo, viewing the facts and reasonable inferences in a light most favorable to the non-moving party. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Once the moving party has satisfied the initial burden that no material facts are in dispute, the non-moving party bears the burden of demonstrating that a genuine dispute of material fact exists. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). In meeting this burden, the non-moving party cannot rely on conclusory or speculative statements based on "[a] mere 'scintilla of evidence' . . . . Rather, the evidence must be such that the jury reasonably could find for the nonmoving party." *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287–88 (4th Cir. 1999).

### III.

### A.

Maages first challenges the district court's ruling dismissing John Doe and Jane Doe for lack of standing. Maages argues that both John and Jane Doe wish to remain anonymous, and that a plaintiff has "absolute standing to raise First Amendment arguments" on behalf of others. Maages's Br. at 25 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). As the district court correctly recognized, however, Maages did not allege in its complaint that John and Jane Doe wished to "keep their identities private," nor did Maages make "an overbreadth challenge to the zoning regulations," which would enlarge the class of plaintiffs with standing. *Maages I*, 4 F. Supp. 3d at 762. While district courts have discretion to permit parties to proceed anonymously, *James v.*

7

*Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993), Maages cannot advance a new argument on appeal that it failed to preserve in the district court, *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).

Maages next challenges the district court's decision to grant summary judgment in favor of the County on Maages's equal protection claim (Count I). Maages made two equal protection challenges in the district court: that the County was discriminating against adult entertainment businesses by applying different regulations to them, and that County officials were singling out Maages in particular for differential treatment. The district court properly granted summary judgment to the County on both challenges.

"Special regulation of one commercial enterprise with particular externalities but not of other enterprises lacking those secondary effects has long been recognized not to violate equal protection." *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 831 (4th Cir. 1979). The district court correctly recognized that Maages did not claim to be a "member[] of any suspect class, and consequently, the claim [was] subject to rational basis review." *Maages I*, 4 F. Supp. 3d at 776. Citing the Supreme Court's decision in *FCC v. Beach Communications, Inc.*, the district court then noted the "strong presumption of validity" afforded to a challenged law under rational basis review. *Id.* (quoting 508 U.S. 307, 314–15 (1993)). The district court also recognized "Fourth Circuit jurisprudence" holding that ordinances designed to combat the undesirable secondary effects of adult businesses advance a substantial government interest. *Id.; see also Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1082 (4th Cir. 2006) ("*Carandola II*") ("[E]ven without considering any evidence, we can conclude that the State has a

8

substantial interest in regulating nude and topless dancing, because such entertainment has a long history of spawning deleterious effects." (internal quotation marks omitted)).

Finally, the district court looked for evidence "that the zoning ordinances [were] motivated by unconstitutional considerations," or that County officials had specifically targeted only Maages when enforcing the ordinance. *Maages I*, 4 F. Supp. 3d at 776. Finding none, the district court correctly rejected Maages's equal protection challenge.

B.

Maages also contends that the district court incorrectly granted summary judgment to the County on Counts II, III, and VI, which all arise from Maages's claim that the ordinances and "special exception" in the County's code amount to an unconstitutional prior restraint of speech. The district court noted that the ordinances and "special exception" could be classified as a time, manner, and place regulation, and not as a prior restraint. *Id.* at 772 n.6. We agree, and reject Maages's challenge to the "special exception" on those grounds.[2]

As the district court recognized, "[t]he level of scrutiny a court applies to a legislative enactment in a First Amendment analysis depends on whether the statute is deemed content-based or content-neutral," and whether the statute bans the activity outright or merely regulates the time, manner, and place of such activity. *Id.* at 762. "[Z]oning ordinances designed to combat the undesirable secondary effects of [adult]

---

[2] The district court also held that even if the "special exception" acted as a license for speech, it still passed the constitutional test for such regulations. *Maages I*, 4 F. Supp. 3d at 773–75. Because we view the "special exception" as a zoning regulation and not as a prior restraint, we do not address this issue.

9

businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986). Content-neutral time, manner, and place regulations do not violate the First Amendment if they advance a substantial government interest using properly tailored means, and provide for reasonable alternative channels for communication. *Id.* at 46–47. The district court correctly noted that "appeals to 'common sense' and 'common experience' are sufficient for the County to meet its burden in demonstrating a substantial interest" in limiting the negative secondary effects of adult entertainment businesses. *Maages I*, 4 F. Supp. 3d at 764 (citing three of our decisions, including *Carandola II*).

Maages argues that the County's zoning framework is a prior restraint on speech, rather than a time, manner, and place regulation. We defined the line between the two categories in *11126 Baltimore Blvd., Inc. v. Prince George's Cty., Md.*. 58 F.3d 988, 994–95 (4th Cir. 1995) *abrogated on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). There, we held that an ordinance which "prohibits adult bookstores from operating anywhere within the County until permission in the form of a special exception has been granted" is a prior restraint. *11126 Baltimore Blvd.*, 58 F.3d at 995. However, regulations which merely restrict certain locations of adult businesses but do not require those businesses to obtain any additional permits are not prior restraints. *Id.* at 995–96. In *Renton*, for example, the regulations mainly prevented adult theaters from operating within 1,000 feet of residential zones and other buildings. 475 U.S. at 44–45; *see also Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 291 (5th Cir. 2003) (finding that zoning regulations restricting the location of adult businesses

are "time, place, and manner regulations . . . if they do not ban such businesses throughout the whole of a jurisdiction and are 'designed to combat the undesirable secondary effects of such businesses' rather than to restrict the content of their speech per se" (quoting *Renton*, 475 U.S. at 49)), *opinion clarified*, 352 F.3d 938 (5th Cir. 2003).

The ordinances in this case more closely resemble the regulations in *Renton*, and thus do not operate as prior restraints on expressive activity. Unlike the regulation in *11126 Baltimore Blvd.*, the ordinances here do not require adult businesses to secure licenses or permits beforehand to operate "anywhere" within the County; instead, adult businesses may operate in I-2 zones without special licenses or permits that are subject to the discretion of a government official. The "special exception" provision of the County's code only comes into effect when an existing business wishes to stay in an area otherwise prohibited by zoning, such as when an adult entertainment establishment wants to remain outside an I-2 zone.

Maages resists this conclusion, relying on the Eleventh Circuit's decision in *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999). In that case, the court addressed a licensing and zoning provision very similar to the ones passed by Prince George's County in this case. In *Lady J.*, however, the city allowed adult entertainment businesses to operate "as of right" in one district, and this district only had two available spaces where adult businesses could operate. *Id.* Thus, because "practically all adult entertainment establishments [had to] apply for a zoning exception to operate anywhere in the City[,] . . . . the indispensability of the zoning exception persuade[d]" the court "to treat it like a license as well." *Id.* Here in contrast, the district

11

court found sixty-two available spaces where adult businesses could relocate to as a matter of right, without the need for any "special exception." We therefore reject Maages's First Amendment challenge to the "special exception" provision, viewing the zoning framework as a time, manner, and place regulation rather than a prior restraint.

C.

Time, manner, and place regulations, however, must provide alternative avenues for communication to remain consistent with the First Amendment. *Renton*, 475 U.S. at 49. Maages alleges in Count VII that there were insufficient alternative avenues of communication for adult entertainment after the County passed the zoning ordinances. On appeal, it argues that the district court erred in granting summary judgment to the County on this issue. We do not agree.

In its analysis of the issue, the district court properly focused on whether "[t]he number of sites available for adult businesses under the new zoning regime [is] greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect." *Maages I*, 4 F. Supp. 3d at 767 (quoting *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery Cty.*, 256 F. Supp. 2d 385, 398). The court then correctly applied that test by focusing on the standards actually used by the County to enforce its zoning laws, instead of considering hypothetical changes in standards that could theoretically harm Maages and other adult entertainment businesses. *Id.* at 767–68. Based on evidence presented by both parties during discovery, the district court recognized that the number of available alternative sites in the County exceeded the

12

number of adult businesses in existence, and thus correctly granted summary judgment to the County on Count VII.

D.

We finally turn to Count V. Maages claims that the language used by the County in its "special exception" provision, delineating when existing businesses will receive an exception to the zoning laws, is unconstitutionally vague. The district court analyzed this Count along with Maages's other prior restraint arguments because Maages failed to provide any specific argument about vagueness. Assuming without deciding that Maages properly preserved this argument for appeal, it lacks merit.

Maages's vagueness challenge attacks six terms used to describe how and when officials should grant the "special exception" for existing businesses: "in harmony"; "in conformance with all the applicable requirements and regulations"; "substantially impair the integrity"; "detrimental"; "in conformance"; and "fullest extent possible." M.J.A. 23–24. To succeed on vagueness grounds, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982). When determining whether vagueness in statutory language is impermissible, courts look to see if the statute's terms are sufficiently definitive to provide individuals with fair notice of the proscribed conduct and guard against arbitrary and discriminatory enforcement. *Smith v. Goguen*, 415 U.S. 566, 572–73 (1974). As long as a law "establishes minimal guidelines to govern" officials and "gives reasonable notice of the proscribed conduct," it will survive a facial vagueness challenge. *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853

13

(4th Cir. 1998) (internal quotation marks omitted). And as the Supreme Court has noted, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates*, 455 U.S. at 498.

Applying those principles to the language in the "special exception" section of the zoning code, we find no constitutional violation. County zoning officials have some discretion to determine whether the existing business and its activities will be able to co-exist with, or at least not substantially undermine, the broader purposes of the zoning plan. But the mere presence of discretion in a policy does not make it unconstitutional. *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language."). Instead, the terms challenged here all have readily ascertainable meanings based on context and dictionary definitions, which sufficiently guide zoning officials in the exercise of their authority. Thus, we affirm the district court's grant of summary judgment in favor of the County on Count V.

IV.

We next address Nico Enterprise's claims that the ordinances are unconstitutionally vague and overbroad.

Turning first to Nico's vagueness challenge, the district court correctly recognized that Nico lacked standing to bring such a claim. *Nico Enters.,* 186 F. Supp. 3d at 499

14

(citing *Village of Hoffman Estates*, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.")). Since the adult entertainment Nico provides falls squarely within the ordinance's coverage, Nico lacks standing to allege that the ordinances are vague.

As for Nico's overbreadth claims, the district court properly analyzed the County's ordinances following the guidance we provided in *Carandola II*, 470 F.3d at 1082 and *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002) ("*Carandola I*"). *Nico Enters.*, 186 F. Supp. 3d at 495–96. The district court recognized that the "intent" clause in the ordinance—restricting the definition of "adult entertainment" to activities done "with the intent to sexually arouse or excite another person"—provides "a certain amount of restraint" that prevents the ordinance from reaching impermissible applications. *Id.* at 498. For the same reasons, we find that the ordinances are not unconstitutionally overbroad.

*AFFIRMED*