**IMAGINARY IMAGES INC.
et al., Plaintiffs,**

v.

**Pamela O'Berry EVANS,
et al., Defendants.**

**Action No. 3:08–CV–398.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 19, 2008.

---

Richard S. Samet, Florancegordonbrown, Richmond, VA, John Michael Murray, Steven Daniel Shafron, Berkman Gordon Murray & Devan, Cleveland, OH, for Plaintiffs.

Mike Melis, Office of the Attorney General, Richmond, VA, for Defendants.

*MEMORANDUM OPINION*

JAMES R. SPENCER, Chief Judge.

THIS MATTER is before the Court on Plaintiffs' Motion for Preliminary Injunction (Docket No. 3). For the following reasons, the Motion for Preliminary Injunction will be DENIED in part, as to Virginia Code sections 4.1–226, 4.1–325, and ABC Regulation, 3 Va. Admin. Code § 5–50–140, with the exception of the term "reasonably separated." The Motion will be GRANTED in part, as it pertains to Virginia Code sections 4.1–222(A)(1)(g), 4.1–223(3), and the phrase "reasonably separated" contained within ABC Regulation, 3 Va. Admin. Code § 5–50–140. These specific sections and phrase will be hereby permanently enjoined.

## I. BACKGROUND

Imaginary Images, Inc., BTF3, and Papermoon–Springfield, Inc., ("Plaintiffs") operate restaurants in Virginia which feature exotic dancing and adult entertainment. (Pls.' Brief in Supp. of Mot. for TRO and Prelim. Inj. 1.) Plaintiffs Imaginary Images and BTF3 hold licenses issued by the Virginia Alcohol Beverage Control Board ("ABC") that permit them to sell beer and wine at the premises. (Pls.' Br. 1.) Pamela O'Berry Evans, Susan Swecker, and Esther H. Vassar are members of the Virginia ABC Board ("ABC" or "Defendant").

In 2007, the Norfolk Division of the Eastern District of Virginia preliminarily enjoined specific Virginia Code sections pertaining to ABC regulations for being unconstitutionally overbroad and vague. *Norfolk 302, LLC v. Vassar*, 524 F.Supp.2d 728 (E.D.Va.2007). As a result, adult entertainment establishments were given access to mixed liquor licenses, something not previously available. (Pls.' Br. 2.)

ABC appealed *Norfolk 302* to the Fourth Circuit, and simultaneously the General Assembly revised the enjoined statutes and regulation. (Def.'s Mem. 6.) The revisions became effective July 1, 2008. The statutes and regulation, as amended, contain language that complies with the Fourth Circuit's decision in *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074 (4th Cir.2006) ("*Carandola II*"), a case dealing with similar alcohol licenses in adult entertainment venues. (Def.'s Mem. in Opp'n to Pls.' Mot. for TRO and Prelim. Inj. 1.) After the amendments were made, ABC filed a Motion to Vacate Judgment as Moot in the Fourth Circuit, arguing that the revisions to the problematic statutes negated the appealable issues. (Def.'s Mem. 6.) On July 16, 2008, the Fourth Circuit granted ABC's Motion, thereby vacating the preliminary injunction, and remanding the matter to the Eastern District of Virginia, Norfolk division, for further proceedings. (Def.'s Mem. 6–7.)

Plaintiffs filed Motions for a Temporary Restraining Order, Preliminary Injunction, and for an Evidentiary Hearing on June 26, 2008. This Court heard oral argument on the TRO Motion on September 15, 2008. The TRO was granted in part and denied in part. This Court held that the challenges to Virginia Code sections 4.1–226, –325, and ABC Regulation section 5–50–140 did not justify a TRO. However, this Court temporarily enjoined Virginia Code sections 4.1–222(A)(1)(g) and 4.1–223(3) because they contain problematic unconstitutional language identified by this Court in *Norfolk 302*. An Evidentiary Hearing was held on November 24, 2008, wherein both parties produced evidence as to the negative secondary effects of adult entertainment establishments. The Motion currently before the Court is Plaintiffs' Motion for Preliminary Injunction.

## II. DISCUSSION

### A. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary remedy," one "to be granted only sparingly." *In re Microsoft Litig.*, 333 F.3d 517, 524 (4th Cir.2003). It "maintains a particular relationship between the parties" to a case before it is decided on its merits. *United States Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 280 (4th Cir.2006). Accordingly, whether a preliminary injunction is warranted depends on the relative effect on the parties of maintaining the status quo, as well as the public interest in doing so. *Id.* A preliminary injunction may not grant relief of a character that could not ultimately be granted. *In re Microsoft Litig.*, 333 F.3d at 525.

■ A court deciding whether to issue a preliminary injunction must weigh four factors: (1) the likelihood of irreparable harm to the plaintiff if its request for relief is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits of its claim; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193 (4th Cir.1977); *accord Wolf Run Mining Co.*, 452 F.3d at 280. The party seeking the preliminary injunction bears the burden of proving that each factor supports granting relief. *Direx Israel Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991).

The United States Supreme Court has not specified the order in which a court should analyze these factors, nor the weight that they should be given. *See Globe Nuclear Svcs. & Supply, Ltd. v. AO Techsnabexport*, 376 F.3d 282, 287 (4th Cir.2004). In some decisions, the Fourth Circuit has instructed that the first two factors—the "balancing of harms" test—are the most important. *See, e.g., Direx Israel*, 952 F.2d at 812. In *Blackwelder*, the Fourth Circuit declared that a court deciding whether to grant a preliminary injunction must first compare the likelihood of irreparable harm to the plaintiff to the likelihood of harm to the defendant and if "a decided balance of hardship" in the plaintiff's favor results based on serious, difficult questions, then a preliminary injunction is warranted. 550 F.2d at 195. As the probability that the plaintiff will suffer irreparable harm decreases, the importance of the third factor—the strength of the plaintiff's case and likelihood of success on the merits—increases. *Id.* Although the Fourth Circuit has adopted this approach on several occasions, it recently cautioned that focusing on the "balancing of harms" test is contrary to Supreme Court precedent. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 n. 2 (4th Cir.2002).[1]

■ In a case where "the irreparable harm that [the plaintiff] has alleged is inseparably linked to his claim of a violation of his First Amendment rights ... analysis of [the plaintiff's] likelihood of success on the merits becomes the first

---

1. In *Scotts*, the Fourth Circuit stated, *"Blackwelder's* emphasis on the balancing of the harms rather than the likelihood of success has been criticized, even within this court, as inconsistent with Supreme Court precedent. *See Safety–Kleen, Inc. v. Wyche*, 274 F.3d 846, 868 (4th Cir.2001).... In the course of their challenges to the preliminary injunction, the defendants ask that we 'restate the standards for a preliminary injunction to restore clarity to [our] jurisprudence.'" *Scotts*, 315 F.3d at 271 n. 2. The Court stated however, that they "cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." *Id.* (*citing Mentavlos v. Anderson*, 249 F.3d 301, 312 n. 4 (4th Cir. 2001)).

and the most important factor for a court to consider." *Ctr. for Individual Freedom, Inc. v. Ireland,* No. 1:08–190, 2008 WL 1837324, at *2 (S.D.W.Va. Apr. 22, 2008) (quoting *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.,* 354 F.3d 249, 254–55 (4th Cir.2003)); *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 511 (4th Cir.2002) ("*Carandola I* "). Therefore, because First Amendment violations are alleged, this Court will first analyze Plaintiffs' likelihood of success for each alleged claim of unconstitutionality.

### B. Likelihood of Success on the Merits

#### 1. Overbreadth Challenges

To be overbroad, a statute must "reach [ ] a substantial number of impermissible applications." *New York v. Ferber,* 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). To determine overbreadth, the first consideration is the degree of scrutiny to apply to the challenge. *Carandola I,* 303 F.3d at 512. The Eastern District of Virginia and the Fourth Circuit have previously held that the level of scrutiny to apply in this style of case is intermediate scrutiny, not strict scrutiny. *Norfolk 302,* 524 F.Supp.2d at 736; *Carandola II,* 470 F.3d at 1082. Additionally, the challenged statutes fall under Virginia's Alcoholic Beverage Control Act, the purpose of which is "to legalize, regulate, and control the ... drinking and use of alcohol." *Id.* (*quoting Miller v. Commonwealth,* 172 Va. 639, 2 S.E.2d 343, 346 (1939)). In *Norfolk 302,* the Court noted that the challenged statutory provisions are surrounded by statutes addressing "secondary effects of alcohol use, including gambling and drug use," and concluded that the challenged statutes regulate alcohol use and not expressive conduct (like exotic dancing). *Id.* (*citing* Va.Code Ann. §§ 4.1–225(1)(g) (drug intoxication),—225(1)(h) (gambling),—226(1) (gambling

devices)); *see also* Preamble, 3 Va. Admin. Code § 5–50 (*amending* 3 Va. Admin. Code § 5–50–140) (noting that evidence exists which records the deleterious effects sexually oriented business have on the community and without these enjoined regulations "there is currently no state law or regulation governing sexually oriented entertainment at establishments licensed for the sale of alcoholic beverages, [which presents] an imminent threat to public health and safety"). Because the challenged statutes were designed to "curb the problematic secondary effects that arise from alcohol consumption" and not expressive conduct or nudity, the proper level of scrutiny to apply is intermediate scrutiny. *Id.* (*citing Carandola I,* 303 F.3d at 515).

Intermediate scrutiny requires that the state "demonstrate that a statute 'materially advances an important or substantial interest by redressing past harms or preventing future ones.' " *Carandola II,* 470 F.3d at 1082 (*citing Satellite Broad. & Commc'ns Ass'n v. FCC,* 275 F.3d 337, 356 (4th Cir.2001)). Therefore, a state must narrowly tailor a statute to serve a "substantial government interest." *Norfolk 302,* 524 F.Supp.2d at 736.

#### a. Sections 4.1–222(A)(1)(g) and –223(3)

■ First and foremost, Plaintiffs challenge sections 4.1–222(A)(1)(g) and 4.1–223(3) for containing ambiguous language determined to be unconstitutionally vague in *Norfolk 302.* ABC acknowledges that these sections contain problematic language ("noisy," "lewd," "disorderly," and "lustful") and plans to seek appropriate legislative revision of these statutes. (Def.'s Mem. 2.) For this reason, sections 4.1–222(A)(1)(g) and 4.1–223(3) shall be permanently enjoined, because they contain unconstitutionally vague language.

#### b. Section 4.1–226

■ Plaintiffs challenge section 4.1–226 as unconstitutional for being overbroad.

Section 4.1–226 [2] was held unconstitutional in *Norfolk 302* for containing the words "lewd" and "lustful"—deemed overbroad by the Court—and because there was no exception for conduct with serious artistic or literary merit, similar to the carve-out approved by the court in *Carandola II*. *See Norfolk 302*, 524 F.Supp.2d at 739. The revision of the statute removed these words, leaving the word "obscene," which the court in *Norfolk 302* accepted as properly defined. *See id.* Additionally, a special carve-out was added, permitting an exception for "serious literary, artistic, scientific, or political" performances within "theaters, concert halls, art centers, museums, or similar establishments that are devoted primarily to the arts or theatrical performances." Va.Code Ann. § 4.1–226; *see id.* ("Again, while a carve-out would most likely remedy the overbreadth, neither statute includes such a clause.").

Plaintiffs assert that even though these carve-outs have been added, the law is still overbroad because "a vast number of establishments that have not been, and are not associated with the claimed adverse secondary effects associated with adult entertainment subject, [are still subject] to the law." (Pls.' Br. 17.) While the Court in *Carandola II* stated that the language of the carve-out does not "cover[ ] *all* venues that might conceivably host serious artistic performances" and that this exception does not fully "limit[ ] the reach of the restrictions to the type of adult entertainment that is associated with harmful secondary effects," the exception was found proper because it "shelter[ed] *most* protected activity." *Carandola II*, 470 F.3d at 1085 (emphasis added) (*citing Farkas v. Miller*, 151 F.3d 900 (8th Cir.1998)).[3] Therefore, Plaintiffs' argument fails because the suggested carve-out provision—while not perfect—has been added to section 4.1–226, curing any overbreadth issues, according to *Carandola II*. Furthermore, the words "lewd" and "lustful" were removed from section 4.1–226 upon revision by the General Assembly. For these reasons, Plaintiffs have failed to demonstrate how these provisions are overbroad and that it would succeed on the merits of a constitutional challenge.

 *c. Sections 4.1–325(11)–(13)* [4]

■ Sections 4.1–325(11)–(13) are challenged for containing the words "strip-

---

**2.** Section 4.1–226, as recently amended, states:

> The Board shall suspend or revoke any license, … if it finds that: … 2. In the licensed establishment of a mixed beverage licensee there (i) is entertainment of an obscene nature, entertainment commonly called stripteasing, topless entertaining, or entertainment that has employees who are not clad both above and below the waist, or (ii) are employees who solicit the sale of alcoholic beverages. The provisions of this clause (i) shall not apply to persons operating theaters, concert halls, art centers, museums, or similar establishments that are devoted primarily to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value.

Va.Code Ann. § 4.1–226 (2008).

**3.** *Farkas* contained an exception for "a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances." 151 F.3d at 901–02.

**4.** Section 4.1–325(11)–(13), as recently amended, states:

> A. In addition to § 4.1–324, no mixed beverage licensee nor any agent or employee of such licensee shall:
> 11. Allow any obscene conduct, language, literature, pictures, performances or materials on the license premises;
> 12. Allow any striptease act on the licensed premises;
> 13. Allow persons connected with the licensed business to appear nude or partially nude; …

Va.Code Ann. § 4.1–325(11)–(13) (2008).

tease," "nude," and "partially nude." The words "immoral," "lewd," "indecent," and "profane" were removed from the statute after the court in *Norfolk 302* found them to be overbroad, and the carve-out provision discussed above (*supra* II.B.2.b.) was added. *See* Va.Code Ann. §§ 4.1–325(11)–(13) (2008). The words "striptease," "nude," and "partially nude," however, remain as language of the statute. *Id.* Defendant asserts that the problematic language was removed, therefore the statute is not overbroad.

In the *Norfolk 302* decision, the court analyzed the terms "striptease," "nude," and "partially nude" under the suggested—and newly added—carve-out provision and found that under the exception, the terms would likely remain constitutional. Specifically, the Court stated:

> Section 4.1–325(A)(13)'s ban on partial[ ] nudity would arguably apply to a victorious athlete who, in celebration, takes off his jersey and tosses it to the crowd. A striptease act, or the like, as enumerated in section 4.1–325(A)(12), conceivably could encompass any suggestive removal of clothing by a Cirque De Soleil performer.

*Norfolk 302*, 524 F.Supp.2d at 739. Therefore, under the carve-out provision, these two hypothetical situations would now be exempted from regulation considering the recent amendments.

Additionally, it should be noted that after the amendments were made, the Court of Appeals granted ABC's Motion to Vacate the Judgment as Moot in the *Norfolk 302* case, thereby lifting the injunction of these statutory provisions—after the terms "striptease," "nude" and "partially nude" were left in the statute. (Def.'s Mem. 12.) The Court finds it persuasive that by adding the carve-out provision, the terms "striptease," "nude," and "partially nude" are not overbroad, because if so, the Fourth Circuit would not have held the judgment of the Eastern District moot.

Because Plaintiffs fail to prove how the terms "striptease," "nude," and "partially nude" will be deemed unconstitutional, or that they are likely to succeed on a constitutional challenge to this provision, Plaintiffs' argument of overbreadth fails.

### d. *3 VAC 5–50–140(A)(3) & (4)*

■ Plaintiffs also challenge ABC Regulation, 3 Va. Admin. Code § 5–50–140 for being overbroad, even with the current amendments. Section 5–50–140 was enjoined in its entirety in *Norfolk 302* because some language was found to be overbroad and no carve-out was provided. (Def.'s Mem. 3.) The Regulation has since been amended to remove the objectionable words—"lewd" and "disorderly conduct"—and to add the same carve-out provision as was added in sections 4.1–226, and –325. *See* 3 Va. Admin. Code § 5–50, (*amending* 3 Va. Admin. Code § 5–50–140). Plaintiffs assert that the language contained in subparts (3) and (4) are unconstitutionally overbroad because they "curtail the expressive content of the artistic message being communicated." (Pls.' Br. 18.) The sections Plaintiffs specifically oppose contain the language "any real or simulated act of sexual intercourse ..." and "[t]he fondling or caressing by any person...." 3 Va. Admin. Code § 5–50–140.

*Carandola II* dealt with this exact language and its constitutionality. There, the defendant, the North Carolina Alcohol Beverage Control Commission, asserted that the statute has "no prohibitory effect on non-erotic dance and would not apply to 'other mainstream entertainment, including popular and award-winning musicals such as *Cabaret*, *Chicago*, *Contact*, and *The Full Monty*.'" *Carandola II*, 470 F.3d at 1083 (*citing Carandola I*, 303 F.3d at 516). In addition, the defendant asserted

that a sexually explicit performance by Madonna would not fall under the provisions of the statute unless it "gave the audience the realistic impression that Madonna was actually performing a sexual act." *Id.* The Fourth Circuit held that because the defendant "iterated and reiterated" that it did not interpret and would not enforce the statute beyond the scope of its stated purpose—erotic dance—that the limiting construction offered by the defendant was acceptable and the statute was not overbroad. *Id.*

Defendant made clear at the hearing that it had circulated a memorandum to all ABC officials specifically defining how and in what circumstances section 5–50–140 was to be enforced. This Court has evaluated this document and finds it to be a proper limiting instruction for the Regulation's enforcement. Therefore, this limiting instruction proffered at the hearing will be adopted by the Court. *See Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). The Supreme Court has cautioned that the overbreadth doctrine "is, manifestly, strong medicine," should be used "sparingly and only as a last resort," and "[a] Court should invoke a 'limiting' construction'... before resorting to a finding of facial overbreadth." *Carandola II,* 470 F.3d at 1081 (*quoting Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Because the limiting construction makes the enforcement of the Regulation narrower, it now coincides with the decision in *Carandola II.* Therefore, Plaintiffs have failed to demonstrate its likelihood of success on an overbreadth challenge of 3 VAC § 5–50–140.

### 2. Unconstitutional Content Based Restrictions and Negative Secondary Effects

Plaintiffs assert that ABC's restrictions impermissibly impose content based restrictions, prohibited by the First and Fourteenth Amendments, and that the ABC cannot justify this restriction based on the secondary effects caused by the presence of adult entertainment establishments. (Pls.' Br. 8, 11.) As stated above, the appropriate level of scrutiny in this case is intermediate scrutiny, which means the Government is required to prove that the statute is narrowly tailored to "materially advance[ ] an important or substantial interest." *Carandola II,* 470 F.3d at 1082.

### a. Narrowly tailored

Plaintiffs assert that the manner in which the ABC is attempting to regulate exotic dancing is not narrowly tailored through their regulations on mixed beverage licenses. Plaintiffs cite a Seventh Circuit case in support of its position, *Joelner v. Village of Washington Park, Illinois,* which struck down, under a strict scrutiny standard, an ordinance drafted for anti-competition reasons that regulated the sale of alcohol at newly opened adult clubs, but not already established clubs. 508 F.3d 427, 432 (7th Cir.2007). The Seventh Circuit held that the statute was "underinclusive" and therefore not narrowly tailored to meet the strict scrutiny standard. *Id.* at 433. The Court continued by stating that, "a complete ban of alcohol on the premises of adult entertainment establishments is the only way the Village can advance [the interest in regulating adult entertainment's negative effects]." *Id.* Plaintiffs attempts to use the same argument by stating that ABC's regulation of mixed beverages is not narrowly tailored to further a substantial government interest because the negative secondary effects are still present where beer and wine are served at adult entertainment venues.

ABC argues that the statutes and regulation are narrowly tailored because they prohibit mixed beverages from being sold

at all adult entertainment venues that fall within the language of the provisions. ABC concedes that "while the distinction between mixed beverage licensees and beer and wine licensees may not eradicate the negative secondary effects of alcohol and establishments presenting adult entertainment, it is a narrowly tailored *tool* in combating such effects given the increased alcohol content of distilled spirits." (Def.'s Mem. 11.)

■■■ A regulation restricting nude dancing in those locations where negative secondary effects exist is narrowly tailored. *Daytona Grand, Inc. v. City of Daytona Beach, Florida,* 490 F.3d 860, 873–85 (11th Cir.2007) (*citing Wise Enters. Inc. v. Unified Gov't of Athens–Clarke County,* 217 F.3d 1360, 1364 (11th Cir. 2000)). And a restriction on locations serving alcohol "does not unduly restrict the ability to communicate an erotic message." *Id.*

The Court also notes, that *Joelner*'s holding was based, in part, on the fact that the statutes were designed for anti-competition reasons, and not entirely to combat negative secondary effects. The current case presents a different situation; mixed beverage licenses are prohibited at all adult entertainment nightclubs and the regulatory provisions were designed entirely with regard to the nature of negative effects of such clubs, not competition. For these reasons, it is unlikely that Plaintiffs will succeed on the merits of a claim based on the statutes and regulation not being narrowly tailored.

### b. Furthering important government interest

■■■ Plaintiffs attempt to challenge the assertion that the statutes and regulation are not aimed at furthering an important

government interest because there are minimal negative secondary effects associated with adult entertainment venues. At the evidentiary hearing, both parties provided evidence supporting their position on the negative secondary effects of exotic dancing establishments. This Court finds that ABC's evidence, and conclusions derived thereof, were reasonable and therefore adequate for the ABC to rely upon when crafting these provisions.

■■■ In *Daytona Grand,* the Eleventh Circuit laid out the standard for determining what type of evidence a governmental body may rely on to justify regulating the relationship between adult entertainment venues and negative secondary effects.[5] 490 F.3d at 873–85. The Court enumerated that the initial burden is with the governmental body to demonstrate how the ordinance, or in this case, statutory and regulatory provisions, further the government's interest in reducing secondary effects. *Id.* at 875 (*citing Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee County,* 337 F.3d 1251, 1269 (11th Cir. 2003)). The governmental body does not need to "conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 451, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). The evidence can be the "municipality's own findings, evidence gathered by other localities, or evidence described in a judicial opinion." *Peek–A–Boo Lounge,* 337 F.3d at 1268.

■■■ Once the governmental body provides evidence that is "reasonably believed to be relevant to its rationale for enacting

---

5. *Daytona Grand* dealt with a city ordinance regulating adult entertainment venues, not a

statute or regulation, but this Court finds that the standard of analysis remains the same.

the [regulation]," the burden shifts to the plaintiff to cast doubt on this rationale either by demonstrating that the governmental body's evidence fails to justify the rationale, or providing evidence disputing the government's findings. *Daytona Grand,* 490 F.3d at 865. If the plaintiff succeeds in casting doubt by either vehicle, the burden shifts back to the government to supplement the record with further evidence justifying how the regulation "furthers" an important governmental interest. *Alameda Books,* 535 U.S. at 439, 122 S.Ct. 1728; *Daytona Grand,* 490 F.3d at 876.

Here, ABC clearly carried their initial burden of producing the evidence that it reasonably relied upon to justify the regulations. ABC testified that it read and evaluated at least forty-two studies that reported on the negative secondary effects of adult entertainment establishments and it used the decision in *Carandola II* and *Norfolk 302* in order to keep their provisions in line with Fourth Circuit and Eastern District of Virginia precedent.[6] Additionally, the preamble to 3 Va. Admin. Code § 5–50 clearly states the purpose of these statutes and regulations: not to "suppress the expressive component of nude dancing and other, related conduct ... [but to] curb the problematic secondary effects that arise from alcohol consumption." *Norfolk 302,* 524 F.Supp.2d at 736. Lastly, *Carandola II* found that parties are permitted to "rely on the evidentiary foundation set forth in *Renton* and *Young*[7] to the effect that [harmful] secondary effects are caused by the presence of even one adult entertainment establish-

ment in a given neighborhood." *Id.* (quoting *City of Erie v. Pap's A.M.,* 529 U.S. 277, 297, 120 S.Ct. 1382, 529 U.S. 277 (2000)). Because Defendant carried its burden, Plaintiffs had a chance to combat Defendant's evidence.

Plaintiffs' evidence must be examined to see if it demonstrated how the ABC's evidence fails to support its conclusions or if it provided evidence disputing Defendant's evidence. Plaintiffs provided the testimony of Professor Daniel Linz of the University of California, Santa Barbara, who conducted a nine month study of the Richmond and Springfield, Virginia areas—the locations of Plaintiffs' night clubs. Professor Linz found that crime "hotspots" were not correlated to adult entertainment establishments and crime did not increase in areas where exotic dancing clubs were permitted to obtain mixed beverage licenses during the past year. He concluded that the state's reasoning was misplaced because he found that the negative secondary effects were not present based on his empirical study of the Richmond and Springfield areas and his past published works.

This Court finds that while Plaintiffs provide legitimate evidence that suggests that ABC could have reached a different conclusion about the connection between adult entertainment establishments and negative secondary effects, just showing that a different conclusion could have been met does not mean that the ABC cannot reach "other reasonable and different con-

---

**6.** In *Carandola II,* the Fourth Circuit accepted the argument that "the State has a substantial interest in regulating nude and topless dancing, because such entertainment has 'a long history of spawning deleterious effects,'" even without any evidence proffered by the defendant. *Id.* (quoting *Steakhouse, Inc. v. City of Raleigh,* 166 F.3d 634, 637 (4th Cir. 1999)).

**7.** *City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) and *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) both presented evidence that adult entertainment establishments created noxious effects on the surrounding neighborhoods.

clusions." *See Daytona Grand,* 490 F.3d at 881. A court may not "substitute its own judgment for that of the [governmental body]," *Peek–A–Boo Lounge,* 337 F.3d at 1273, and as long as the regulation is justified by credible evidence that was reasonably relied upon, the court should uphold the regulation. *Daytona Grand,* 490 F.3d at 876 (quoting *Peek–A–Boo Lounge,* 337 F.3d at 1273).

Therefore based on the substantial body of evidence presented at the hearing by the ABC, this Court finds that the evidence ABC relied upon was credible and Defendant reasonably believed that the evidence is. relevant to the negative secondary effects related to adult entertainment venues. Therefore the statutes and regulation further a substantial government interest. For that reason, Plaintiffs' challenge of unconstitutional content based restrictions and lack of proof of negative secondary effects is unlikely to succeed on the merits.

### 3. *Vagueness Challenges*

A statute will be determined to be impermissibly vague if it either "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Carandola II,* 470 F.3d at 1079 (*citing Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). The question the Court is faced with is whether the challenged provisions are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Broadrick,* 413 U.S. at 608, 93 S.Ct. 2908. Additionally, the Court must refrain from using a mathematical certainty in the language. *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

### a. *Section 4.1–226*

Plaintiffs assert that the terms used in section 4.1–226, specifically "stripteasing," and "clad both above and below the waist" are vague. (Pls.' Br. 22.) The term "striptease" has been used in Supreme Court and Fourth Circuit cases without requiring a definition, implying that the word has common meaning of which an "ordinary person exercising ordinary common sense can sufficiently understand." *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 581, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (describing a striptease as "a dancer's acts in going from clothed to nude ... are integrated into the dance ..."), *Willis v. Town of Marshall, N.C.,* 426 F.3d 251, 257 (4th Cir.2005) (using the terms "ballet" and "striptease" to describe forms of dance in a way that the reader would know that ballet and striptease are two different forms of dance, but they are still both dances). Further, Merriam–Webster's Online Dictionary defines striptease with only one definition, "a burlesque act in which a performer removes clothing piece by piece." *See* Merriam–Webster OnLine, http://www.merriam-webster.com/ dictionary/ striptease. Therefore the challenge to the word striptease is unlikely to succeed on ground that it is vague because an ordinary person would know the meaning of the word.

As to the vagueness challenge of the phrase "clad both above and below the waist," a search of the term "clad" in Fourth Circuit case law yields over 100 results, all using clad similarly, as a synonym for "wearing" or "clothed." Additionally, Merriam–Webster Online Dictionary defines clad as to "being covered or clothed." *See* Merriam–Webster OnLine, http://www.merriam-webster.com/ dictionary/clad. For these reasons, it seems highly unlikely Plaintiffs would succeed on

a vagueness challenge to this phrase, or any challenge of vagueness as to section 4.1–226.

#### b. Section 4.1–325

Plaintiffs also assert that the use of the term "partially nude" in section 4.1–325 is vague and therefore unconstitutional. The standard for vagueness is whether a person exercising common sense could understand what the term "partially nude" means. Again, turning to the commonly understood meaning, this Court finds that partially nude means that not all, but many, body parts are uncovered. This Court understands clearly what the term partially nude is and finds it unlikely that Plaintiffs will succeed on the merits of a vagueness claim of the phrase "partially nude."

#### c. 3 VAC 5–50–140(3)

Plaintiffs challenge the use of the terms "any real or simulated acts of sexual intercourse ..." as unconstitutionally vague. This term however, was found to be clear, and therefore constitutional, in *Carandola II,* There, the Fourth Circuit held that the word "simulate" had been upheld in context to sexual acts and is "sufficiently precise to notify persons of ordinary intelligence of the conduct prohibited by the statute and to prevent the risk of arbitrary or discriminatory enforcement." *Carandola II,* 470 F.3d at 1080 (*citing Ferber,* 458 U.S. at 765, 102 S.Ct. 3348 ("actual or simulated sexual intercourse sufficiently describes" the prohibited material); *Miller v. California,* 413 U.S. 15, 25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ("ultimate sexual acts" whether "actual or simulated" are plain examples "of what a state statute could define for regulation"); *Farkas v. Miller,* 151 F.3d 900, 901, 905 (8th Cir.1998) (holding that "the actual or simulated public performance of any sex act" is not vague because "[p]er-

sons of ordinary intelligence would not be confused as to the ... meaning of the term.")). The *Carandola II* court further held that "an act only constitutes simulated sexual intercourse ... if it creates the realistic impression of an *actual* sexual act." *Carandola II,* 470 F.3d at 1080. This Court finds the explanation by the *Carandola II* court persuasive and believes that Plaintiffs are unlikely to succeed on a challenge of the vagueness of this phrase.

#### 4. "Reasonably Separated" Challenge

Plaintiffs further allege that the regulation requiring performers to be "reasonably separated" from patrons lacks an intent requirement and is therefore unconstitutional. The ABC regulation requires patrons and entertainers to remain "reasonably separated" meaning "no portion of the body of an entertainer may come into contact with any portion of the body of a patron." 3 Va. Admin. Code § 5–50–140. Plaintiffs argue that the term "reasonably separated" is unconstitutional because it does not have an associated mens rea.

Plaintiffs rely on a case from the Northern District of Ohio which found that a municipal law prohibiting a seminude employee of the cabaret from touching a patron was unconstitutional because it lacked a mens rea requirement. *Threesome Entm't v. Strittmather,* 4 F.Supp.2d 710, 722 (N.D.Ohio 1998). The court held that the provision was unconstitutional because it "impose[d] strict liability upon employees and patrons ... regardless of the employee's or patron's scienter and regardless of the nature of the contact." *Id.* The Court continued by stating that even inadvertent or accidental touching was criminalized, which included "a handshake or the handing over money [sic]." *Id.* The *Strittmather* case considered, but distin-

guished itself from, the decision in *Hang On, Inc. v. City of Arlington*, where the no-touch provision was found to be constitutional because Texas law provides for a default mental state of "intent, knowledge or recklessness" in order to be culpable. 65 F.3d 1248, 1254 (5th Cir.1995). Because the default mental state provided a limiting construction to the no-touch provision in that case, the Fifth Circuit did not find the provision overbroad.

■■■■■ Virginia permits the creation of strict liability offenses "and there is no constitutional requirement than an offense contain a mens rea or scienter element." *Maye v. Commonwealth*, 213 Va. 48, 49, 189 S.E.2d 350, 351 (Va.1972). Therefore, "courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime." *Morissette v. United States*, 342 U.S. 246, 256, 258, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Makarov v. Commonwealth*, 217 Va. 381, 385–86, 228 S.E.2d 573, 575–76 (1976).

ABC attempts to defend the language by asserting that the punishment for violation of the current regulation is administrative, not criminal, like the penalty in *Strittmather*. ABC attempts to cite *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) for the proposition that "[t]he Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* However, this Court does not find ABC's arguments persuasive. The language "reasonably separated" fails to consider the possibility of accidental touching or a handshake and for this reason, it is likely that Plaintiffs would prevail on a claim of unconstitutionality of the phrase "reasonably separated."

For these reasons, Plaintiffs have failed to demonstrate a likelihood of success on the merits of a claim of unconstitutionality on all of the above claims, except sections 4.1–222, 4.1–223(3), and the phrase "reasonably separated."

## C. Irreparable Harm to Plaintiff

■■■■ The Court must next analyze the harm to the Plaintiffs, and it is well-settled that "[t]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Because Plaintiffs assert that their First Amendment rights have been infringed upon by the challenged regulations, the Court finds that harm to the Plaintiffs can be inferred. Further, Plaintiffs may face the threat of civil penalties for violation of these challenged statutes, which clearly constitutes irreparable harm.

## D. Harm to Defendant, ABC, and Public Policy

■■■■ The last two elements for the Court to analyze are the harm to Defendant and the public policy justifications. ABC asserts that its purpose of protecting the public through regulation of alcohol and the public policy justifications will be greatly affected if the statutes and regulations are enjoined because "[t]he sexually oriented conduct that the statutes and regulation seek to control would not be subject to penalties with regard to alcohol distribution. As a result, the state would be less able to combat acknowledged harmful secondary effects and the public interest would not be served." (Def.'s Mem. 18.) While this argument has merit, a similar argument was disregarded in *Carandola I* where the Court found the result of an injunction to be an improvement on the system, not a diminution of the effects of the statutes. 303 F.3d at

521. Further, *Carandola I* held that the public interest is served more by "upholding constitutional rights." *Id.* For these reasons, these factors do not outweigh the harm to the Plaintiffs if the injunction is not granted.

While the balancing of harms appears to generally weigh in favor of Plaintiffs, they have failed to demonstrate a likelihood of success on the merits of any of the above constitutional claims, except for the claims regarding 4.1–222, 4.1–223(3), and the phrase "reasonably separated" in the ABC regulation.

## CONCLUSION

For the above reasons, Plaintiffs' Motion for Preliminary Injunction will be DENIED as to sections 4.1–226, 4.1–325 and 3 Va. Admin. Code § 5–50–140. However, Plaintiffs' Motion will be GRANTED as to sections 4.1–222, 4.1–223, and the phrase "reasonably separated" contained within 3 Va. Admin. Code § 5–50–140, and these sections and phrase will be permanently enjoined.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.